IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

AMERICAN CIVIL LIBERTIES UNION OF FLORIDA INC,

       Plaintiff,

v.                                         CASE NO. 1:07-cv-00018-MP-AK

DIXIE COUNTY FLORIDA,

       Defendant.

_____/

# O R D E R

This matter is before the Court on the following motions:

- Docs. 38-40 and 43-48, Defendant's motion for summary judgment, to which the Plaintiff responded, docs. 50-52, to which response the Defendant replied, doc. 55.

- Doc. 56, Plaintiff's motion to strike doc. 55, Defendant's Reply

- Doc. 57, Defendant's Motion for Leave to Reply

As an initial matter, the Motion for leave to reply (doc. 57) is granted *nunc pro tunc*, and the motion to strike (doc 56) is denied. The Plaintiff is correct that leave to reply is required by Local Rule 7.1(C)(2), but the Court finds that the reply will aid in consideration of the issues in the case.[1]

We turn now to the motion for summary judgment. This case involves a challenge by Plaintiff, American Civil Liberties Union of Florida Inc, ("ACLU") , to a stone display of the

---

[1]The Defendant indicates that it filed the Reply without first seeking leave of court because it interpreted the docket entry "ACTION REQUIRED BY DISTRICT JUDGE" to mean that action - in the form of a reply brief - was required from the parties at the behest of the district judge. The Defendant later gets it right, however, in its motion for leave to file reply. In that motion, the Defendant correctly notes that this docket entry is generated by the Clerk's office and is directed at the Court itself and is not instructing the parties to take action.

Ten Commandments on the steps of the Dixie County Courthouse.  ACLU's standing to bring the suit is based on the standing of one of its individual members, and Dixie County moved for summary judgment to challenge that member's standing to bring the suit.  For the reasons which follow, the Court concludes that the individual member has standing and the suit should proceed.

On January 19, 2006, the Dixie County (the "County") Board of Commissioners voted to have a display of the Ten Commandments placed on the front of the County Courthouse steps. (Doc. 1 at ¶8, Exhibit 1, Doc. 12 at ¶8).  The finished display consists of a six-ton, over five-foot tall granite slab inscribed with the Ten Commandments and the message, "LOVE GOD AND KEEP HIS COMMANDMENTS."  (Doc. 1 at 11, Doc. 12 at ¶8).  Housed inside the County Courthouse, where the display has been located since November 2006, are the offices of the State Attorney, Supervisor of Elections, Sheriff, Tax Assessor, Clerk of Court, and Board of County Commissioners.  (Doc. 1 at ¶9-¶10, Doc. 12 at ¶9-¶10).  Inside as well is the Register of Deeds.  (Doc. 52 at 4, under seal).

On February 6, 2007, the American Civil Liberties Union of Florida brought an action for declaratory and injunctive relief on behalf of its members challenging the display as a violation of the Establishment Clause of the First Amendment.  (Doc. 1 at ¶1).  The American Civil Liberties Union (the "ACLU") is a national, non-profit membership organization dedicated to advancing and preserving the constitutional rights found in the Bill of Rights, in particular the First Amendment.  (Doc. 1 at ¶4).  Plaintiff in this case is a state affiliate of the national organization, the ACLU of Florida, which claims that unwelcome contact with the display harmed at least one individual member of the ACLU of Florida, dubbed "John Doe," who would have standing to sue in his own right. Id ¶ 5.

According to the Plaintiff's response to the motion for summary judgment, doc. 52, John Doe has been a member of the ACLU since 1989 and owns a home in Trenton County, Florida, adjacent to Dixie County, Florida, where he spends five months out of each year.  (Doc. 52 at 2). For the remaining seven months, Doe resides in North Carolina.  Id.  In 2004, Doe and his wife began looking to purchase real property in Dixie County on which they could park their recreational vehicle ("RV").  Id. at 3.  Doe alleges that he was particularly interested in buying property in Dixie County because the County is one of a handful in Florida with zoning regulations permitting residents to live in RVs attached to a septic tank and power source on their property.  Id.

On January 24, 2007, after contacting a realtor, Doe and his wife toured a piece of property for sale in the County.  Id.  After viewing the property, Doe and his wife went to the County Courthouse to find more information on any encumbrances or restrictions on the property and the amount of property taxes.  Id. at 3-4.  At that time, Doe encountered the Ten Commandments display on the Courthouse steps.  Id. at 4.  Deeply disturbed by County's apparent endorsement of the Christian religion, Doe nonetheless completed his research and found there were no restrictions on the property and that use of an RV was permitted.  Id.  Were it not for the display, Doe would have called the realtor at that time and negotiated a sale price. Id.  Because of the display, however, Doe decided not to make an offer for the property.  Id. at 5.  Accordingly, Doe also suspended his search for property in the County.  Id.  Researching additional property in the County, or living on property in the County, would require Doe to repeatedly encounter the display any time he visited one of the government offices inside the Courthouse.  Id.  Therefore, Doe maintains that the presence of the display has effectively

prevented him from living in the County.  Id.  If the County were to remove the display, Doe

claims that he would immediately recommence his search.  Id. at 5-6.

"For the purposes of ruling on a motion to dismiss for want of standing, both the trial and

reviewing courts must accept as true all material allegations of the complaint, and must construe

the complaint in favor of the complaining party."  Warth v. Seldin, 422 U.S. 490, 501 (1975)

(noting that the trial court may also allow the plaintiff to amend its complaint to supply more

particularized allegations of act to support its claim of standing).  After reviewing all materials

on the record, if plaintiff's standing is not evident, the trial court must dismiss the complaint.  Id.

at 502.

In order to establish standing, and thereby satisfy the case or controversy requirement of

Article III of the U.S. Constitution, a plaintiff must show an "actual or threatened injury," and a

"fairly traceable" causal connection between the claimed injury and the challenged conduct.

ACLU v. Rabun County Chamber of Commerce, Inc., 698 F.2d 1098, 1102 (11th Cir. 1982)

(quoting Gladstone, Realtors v. City of Bellwood, 441 U.S. 91, 99 (1979) and Duke Power Co.

v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 72 (1978)).  The injury must be "concrete and

particularized, and . . . actual or imminent, not conjectural or hypothetical."  Lujan v. Defenders

of Wildlife, 504 U.S. 555, 560 (1992)(citations omitted)(finding that "some day" intentions to

travel to see an endangered species' habitat was not a plan concrete enough support a finding of

actual or imminent injury); see also Alabama Freethought Ass'n v. Moore, 893 F. Supp. 1522,

1536-38 (N.D. Ala. 1995) (finding that status as potential juror in one particular courtroom

where challenged conduct could occur was insufficient to establish standing).   Likewise, it must

be likely that a favorable decision will redress the injury.  Lujan, 504 U.S. at 561.  In the case of

an organization-plaintiff, once an individual member of the organization has standing to bring a claim in his own right, the organization will have standing to sue on behalf of its members.  Hunt v. Washington State Apple Adver. Comm'n, 432 US. 333, 343 (1977) (finding principles of standing also require that the interests the organization seeks to protect be germane to its purpose and the lawsuit not require participation of the organization's members).

For plaintiffs bringing Establishment Clause claims, demonstrating the requirements of standing is even more difficult than in the usual case because of the spiritual and value-laden motives underlying such claims.  Rabun, 698 F.2d at 1102.  Over the years, however, the Supreme Court has provided some guidance on what will satisfy the "actual or threatened injury," or injury-in-fact requirement of standing in Establishment Clause cases.  An injury-in-fact cannot consist entirely of "a mere spiritual stake in the outcome" or "an intense commitment to separation of church and state."  Id. at 1103 (quoting Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 484-86 (1982) (holding that the "psychological consequence presumably produced by observation of conduct with which one disagrees" is not sufficient to confer standing)).  The injury can, however, consist of a purely noneconomic injury, as long as the injury is a direct, personal one.  Id. at 1104, 1108 (finding injury where plaintiffs demonstrated the effect that the presence of an illuminated cross had on their right and willingness to use a state park); see, e.g., Saladin v. City of Milledgeville, 812 F.2d 687, 691 (11th Cir. 1987) (finding injury where city residents received mail with city seal containing the word "Christianity"); Valley Forge, 454 U.S. at 485-86 & n.22 (finding no injury where plaintiff's only claim was violation of the Constitution); Sch. Dist. of Abington Township v. Schempp, 374 U.S. 203 (1963) (finding injury where parent and children's right to use public

schools was affected by a law requiring Bible reading in the classroom).

Likewise, the Eleventh Circuit has held there to be "no minimum quantitative limit required to show injury;" rather, it found that courts should focus on "the qualitative nature of the injury, regardless of how small [it] may be." Saladin, 812 F.2d at 691. "'Injury in fact' . . . serves to distinguish a person with a direct stake in the outcome of a litigation–even though small–from a person with a mere interest in the problem." Rabun, 698 F.2d at 1108. It is enough, for the purposes of the injury-in-fact requirement, that a plaintiff allege that in the pursuit of his regular affairs he is exposed to the challenged activity. Moore, 893 F. Supp. at 1540 (citing Rabun, 698 F.2d at 1108) (finding that plaintiffs, potential jurors, failed to show that their business affairs or other activities included making regular appearances in the defendant's courtroom).

In Valley Forge, a case factually distinct from the present case, the plaintiffs challenged the government's gratuitous transfer of surplus property located in Pennsylvania to the defendant, a Christian college. 454 U.S. at 467-69. The plaintiffs' only claim was that the Establishment Clause had been violated by the transfer. Id. at 486. Accordingly, the plaintiffs failed to claim that they had suffered any personal injury as a consequence of the alleged constitutional violation. Id. Moreover, the plaintiffs had no interest in property in Pennsylvania and had only learned of the transfer after reading a press release. Id. at 486-87. Thus, the Court found that the plaintiffs had not suffered any cognizable injury and as a result did not have standing to bring their claim. Id.

In contrast, in Abington, the parents of children attending public high schools challenged state and city laws, as well as the conduct of the schools pursuant to those laws, that required

Bible reading at the opening of each school day.  374 U.S. at 205-06.  Finding that the plaintiffs

had standing, the Court noted that the school children and their parents were directly affected by

the challenged laws and practices.  Id. at 224-25 n.9.  In addition, the Court found that the

required Bible reading was not mitigated by the fact that individual students could absent

themselves from the readings if their parents requested it.  Id. at 225.

       Drawing factual comparisons to the plaintiffs in the Abington case, the Eleventh Circuit

in Rabun found that the plaintiffs had shown that they had suffered an individualized injury,

other than a mere psychological reaction, as a result of the defendant's challenged conduct.  698

F.2d at 1107-08.  In Rabun, a county in Georgia had erected an illuminated Latin cross on an 85-

foot structure in a nearby state park.  Id. at 1101.  Plaintiffs were residents of Georgia who

complained that because of the "physical and metaphysical" impact of the cross, they were

forced to locate other places to camp or suffer the imposition of unwelcome religious symbolism.

Id. at 1108.  Unequivocally, plaintiffs claimed that they would not camp in the park because of

the presence of the cross.  Id. at n.18.  That was enough for the court to find that plaintiffs had

the requisite injury, or "personal stake," in the outcome.  Id. at 1108.

       In the present case, Doe has alleged an injury-in-fact sufficient to meet the first

requirement of standing.  Similar to the plaintiffs in Valley Forge, Abington, and Rabun, Doe has

alleged a spiritual belief in the separation of church and state, as well as a psychological

disturbance as a result of the County's conduct.  In addition, however, Doe has alleged a definite

and particularized personal injury, or a personal stake in the outcome, similar to the plaintiffs in

Rabun.  Like the plaintiffs in Rabun, Doe will not visit the County Courthouse or search for

property in the County because of the religious display.  Indeed, Doe claims he will avoid the

County Courthouse so that he does not suffer the unwelcome religious message of the Ten Commandments.  That Doe could easily absent himself from the offensive conduct, like the plaintiff's in Abington, should not constitute a mitigating factor.

In addition, similar to the plaintiffs in Rabun, Doe has a right as a member of the general public to visit the Courthouse and search public records for restrictions or encumbrances on property in the County even though he is not a resident of Florida.  There is nothing in the parties' pleadings to indicate otherwise.  Moreover, not only is the Courthouse home to courtrooms and judges' chambers, but it contains several other offices pertinent to the purchase of real property including the Register of Deeds and the Tax Assessor.  Therefore, unlike the plaintiffs in Alabama Freethought Ass'n v. Moore, 893 F. Supp. 1522, 1536-38 (N.D. Ala. 1995) - who sought to show standing by pointing out that they might become potential jurors in one particular courtroom where challenged conduct could occur - Doe's search for property, and use of the government offices, is the kind of activity that would bring him to the County Courthouse on a regular basis.

Furthermore, there is nothing about Doe's injury that is conjectural or hypothetical like the plaintiffs' injury in Lujan.  Although Doe's injury is noneconomic, as he has not suffered any monetary losses as a result of the display, his injury is particularized to the extent that he has alleged a continuing ability and desire to buy property in the County.  Indeed, Doe has alleged that he would, but for the display, be looking for or have already purchased property in the County.  Thus, Doe's allegations are in significant contrast to the "some day," conjectural plans of the plaintiffs in Lujan.

As for the other elements of standing, given Doe's "but-for" allegation, as well as the

specific allegations of the effect of the display on Doe's search for property, it is clear that there

is a "fairly traceable" causal connection between Doe's claimed injury and the County's

challenged conduct.  Moreover, it is evident that a favorable finding by this Court as to the

County's display of the Ten Commandments would redress Doe's injury, as he has alleged that

he would recommence his search for property if the display were removed.

For the above reasons, it is hereby

**ORDERED AND ADJUDGED:**

1. Docs. 38-40 and 43-48, Defendant's motions for summary judgment are DENIED.
2. Doc. 56, Plaintiff's motion to strike doc. 55, Defendant's Reply, is DENIED.
3. Doc. 57, Defendant's Motion for Leave to File Reply is GRANTED *nunc pro tunc.*
4. As stated in the order at doc. 37, the Court must now reset the discovery deadlines.  The parties are instructed to meet and work out a new discovery schedule, following the procedures and spirit of Fed. R. Civ. P. 26(f).  The Joint Report required by that Rule shall be filed by Friday, September 5, 2008.

**DONE AND ORDERED** this _8th_ day of August, 2008

_____*s/Maurice M. Paul*_____
Maurice M. Paul, Senior District Judge