IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

AMERICAN CIVIL LIBERTIES UNION OF FLORIDA INC,

    Plaintiff,

v.                                                                                  CASE NO. 1:07-cv-00018-MP -GRJ

DIXIE COUNTY FLORIDA,

    Defendant.

_____/

**O R D E R**

This matter is before the Court on Doc. 116, Motion for Summary Judgment by American Civil Liberties Union of Florida, Inc.  This case involves a challenge by Plaintiff, American Civil Liberties Union of Florida, Inc. ("ACLU"), to a display of the Ten Commandments on the front steps of the Dixie County Courthouse.  The ACLU asserts that the display violates the Establishment Clause of the First Amendment to the United States Constitution.  Dixie County, on the other hand, contends that the display is protected as private speech under the Free Speech Clause of the First Amendment.  For the following reasons, the Court finds that the display is an unconstitutional endorsement of religion by Dixie County, Florida.

I. BACKGROUND

Approximately one week before a January 2006, regular meeting of the Dixie County Board of County Commissioners, Skipper K. Jones, who works for local businessman Joe H. Anderson, Jr., called then-Chairman John L. Driggers on Anderson's behalf.  Jones asked Driggers if the board would have the courage to allow Anderson to put a monument displaying

the Ten Commandments on the courthouse steps if he paid for it.  Driggers Dep. at 14.  During the meeting, Driggers told the Board about the phone call and Anderson's request.  *See id.*  All members of the Board agreed "they would like to see this accomplished."  *Id.*  The county attorney, Joseph T. Lander, offered to defend any lawsuits resulting from the monument for free.  *Id.*  The Board then voted unanimously "to go ahead with having the Ten Commandments placed on the front of the courthouse steps."  *Id.* at 12.

Anderson paid more than $20,000 for the monument, which he ordered from Benjamin Barber, Jr. at Dixie Monument.  Barber Dep. at 21.  Jones assisted Anderson with the purchase and planning.  Jones Dep. at 13-17.  Jones also discussed how the project was progressing with County Commissioners on several occasions.  Anderson Dep. at 29.  Arthur Bellot, the County Coordinator, gave Jones instructions on where to put the monument and checked to make sure the building's foundation would support it.  Jones Dep. at 19.

On Saturday, November 25, 2006, Barber, along with several other men, used a crane to install the monument at the top of the courthouse steps.  Anderson Dep. at 31; Jones Dep. at 18; Bellot Dep. Ex. 10.  The Monument, which is over five-feet tall and made of granite, Am. Answer (Doc. 27) ¶ 11, weighs six tons, Barber Dep. at 18-19.  In addition to the Ten Commandments themselves, the monument is inscribed at its base, in letters much bigger than the text of the Commandments: "LOVE GOD AND KEEP HIS COMMANDMENTS."  Compl. (Doc. 1) Ex. 2 (admitted).  The monument sits in the center of the façade of the courthouse with no other displays or exhibits on the steps, directly under the title "Dixie County Courthouse" that spans most of the length of the building.  *Id.*; Am. Answer (Doc. 27) ¶ 12.  The courthouse is the center of government authority for the county, housing the offices of the Sheriff, State Attorney, Tax Assessor, Board of County Commissioners, Supervisor of Elections, and Clerk of Court.

Compl. (Doc. 1) ¶ 9 (admitted).  The county owns the land on which the monument sits.  Lamb Dep. at 17.

Inside the courthouse, there are monuments on the wall dedicated to World War II and Vietnam War veterans.  Bellot Dep. Ex. 1.  There is also a monument to Persian Gulf War veterans on the corner of the sidewalk abutting the courthouse grounds.  Bellot Dep. at 21-22.  The veterans monuments were donated by private individuals or entities, Lamb Dep. at 23, and maintained by the county, Driggers Dep. at 23.

Less than three months after the monument was installed, the American Civil Liberties Union of Florida brought an action for declaratory and injunctive relief on behalf of its members challenging the display as a violation of the Establishment Clause of the First Amendment. (Doc. 1 at ¶1).  The American Civil Liberties Union is a national, non-profit membership organization dedicated to advancing and preserving the constitutional rights found in the Bill of Rights, in particular the First Amendment.  (Doc. 1 at ¶4).  Plaintiff in this case is a state affiliate of the national organization, the ACLU of Florida, which claims that unwelcome contact with the display harmed at least one individual member of the ACLU of Florida, dubbed "John Doe," who would have standing to sue in his own right.  Id ¶ 5.  The parties litigated the case for over a year, and in August 2008, this Court denied Dixie County's motion to dispose of the case on the grounds that the local ACLU members did not have standing to sue.  Doc. 63.

Shortly after their motion to dismiss was denied, the Board of Commissioners approved a set of "Monument Placement Guidelines," which purport to establish a limited public forum on the courthouse steps.  Valentine Dep. 16 (approval); Lamb Dep. Ex. 5 (guidelines).  The stated intent of the guidelines is to allow "monuments or displays commemorating people, events and ideas which played a significant role in the development, origins or foundations of American or

Florida law, or Dixie County." Lamb Dep. Ex. 5 § 1.1

According to the guidelines, only residents of Dixie County or organizations that maintain offices and provide services in Dixie County may apply to erect a monument. Lamb Dep. Ex. 5 § 1.1. Those interested in erecting a monument must submit an application to the Board. *Id.* § 1.2. As a condition for approval, Commissioners may modify or alter the proposed monument. *Id.* § 1.5(c)(i). Because the space on the courthouse steps is not unlimited, applications are to be accepted on a "first-come, first-served" basis. *Id.* § 1.1. Monuments must include the "entire text" of any document displayed and be of such size or structure as to be "incapable of being quickly removed." *Id.* § 1.3(a) and (d). The guidelines further require the display of a disclaimer in a prominent place on the courthouse steps to advise that the Board does not endorse the "items" in the "forum." *Id.* § 1.4. The guidelines also establish protections for the county by requiring those who would add displays to post a bond between $10,000 and $50,000 and obtain general liability insurance coverage of $5,000,000 per occurrence, naming the county and the Board as insureds. *Id.* § 1.5(c)(vii) and (viii).

Although the guidelines purport to apply to all displays in the "forum," Defendant has never required Anderson to obtain the required $5,000,000 of insurance. Anderson Dep. at 38-39. Defendant also did not require Anderson to post a bond before installing the monument. Bellot Dep. at 50-51.

This matter is currently before the Court on Motion for Summary Judgment by the ACLU. Doc. 116. Dixie County responded with a memorandum in opposition. Doc. 120. The ACLU was granted leave to reply, and did so. Doc. 124. A hearing was held on January 19, 2010. The Court now considers the ACLU's Motion for Summary Judgment.

At issue in this case is whether a five-foot, six-ton granite monument on the front steps of

the Dixie County courthouse, displaying the Ten Commandments as well as directing all viewers to "LOVE GOD AND KEEP HIS COMMANDMENTS," violates the Establishment Clause of the First Amendment to the United States Constitution.  More specifically, at issue in this motion for summary judgment is whether the Establishment Clause has been violated as a matter of law.  Though the parties draw rather different inferences from the facts presented, the facts themselves are sufficiently undisputed to make this controversy ripe for summary judgment.

## II. SUMMARY JUDGMENT

In considering a motion for summary judgment, the Court must view all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).  Under Fed. R. Civ. P. 56(c), a motion for summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

## III. DISCUSSION

While Dixie County's "Monument Placement Guidelines" only permit monuments or displays that commemorate events and ideas which were historically significant to the "development, origins or foundations of American or Florida law, or Dixie County," neither party disputes the religious significance of the display.  Moreover, the Supreme Court has stated that "'[t]he Ten Commandments are undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact.'" *Glassroth v. Moore*, 335 F.3d 1282, 1295 (11th Cir. 2003) (quoting *Stone v. Graham*, 449 U.S. 39, 41, 101

S. Ct. 192, 194 (1980)).  As such, the display of the Ten Commandments is a form of religious expression governed by the First Amendment.

*A.  Who is the Speaker?*

Both parties agree this case is controlled by First Amendment precedent.  They disagree, however, over which clause of the First Amendment.  The ACLU argues that the display of the Ten Commandments on the front steps of the Dixie County Courthouse violates the Establishment Clause of the First Amendment.  Dixie County contends that the display is private speech, protected by the Free Speech Clause of the First Amendment.  "[T]here is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect."  *Board of Educ. v. Mergens*, 496 U.S. 226, 250, 110 S. Ct. 2356, 2372 (1990) (emphasis in original).  Whether Dixie County is engaging in its own expressive conduct or providing a forum for private speech determines which precedents govern here.

If Dixie County is engaging in its own expressive conduct, then the Free Speech Clause has no application.  The Free Speech Clause restricts government regulation of private speech, it does not regulate government speech.  *See, e.g., id.*  This does not mean that there are no restraints on government speech.  Government speech must still comport with the Establishment Clause.  *See, e.g., id.*

In *Capitol Square v. Pinette*, which Dixie County cites extensively, the Klu Klux Klan sought to place a cross in the plaza next to the Ohio state capitol for the Christmas season.  515 U.S. 753, 115 S. Ct. 2440 (1995).  The Capitol Square Review Board denied the Klan's application on Establishment Clause grounds.  *See id.* at 758, 115 S. Ct. at 2445.  The Supreme Court held that "the state may not, on the claim of misperception of official endorsement, ban all

private religious speech from the public square . . . ." *Id.* at 769, 115 S. Ct. at 2450.

Dixie County maintains that, like *Capitol Square*, no Establishment Clause violation occurred because the display was merely a private party's expression in a designated public forum. As the Supreme Court explained, "[r]eligious expression cannot violate the Establishment Clause where it (1) is purely private and (2) occurs in a traditional or designated public forum, publicly announced and open to all on equal terms." *Id.* at 770, 115 S. Ct. at 2450. The monument currently sits in what Dixie County describes as a designated public forum, so whether Free Speech Clause analysis or Establishment Clause analysis apply depends on whether the speech in question is purely private.

In support of their argument, Dixie County points out that the evidence in this case is undisputed with respect to the monument's ownership. The monument was bought by, belongs to, and is owned exclusively by, Mr. Anderson. It was designed exclusively by Mr. Anderson and was placed on the courthouse steps by Mr. Anderson's hired workers. Mr. Anderson is exclusively responsible for the maintenance, and, if necessary, repair of the monument. The monument sits at the top of the courthouse steps at the pleasure of Mr. Anderson, who is free to remove and dispose of it at his discretion and in whatever form or fashion he decides, without any prior approvals. Mr. Anderson has not donated the monument to Dixie County, and has not relinquished control of it.

Likewise, Dixie County does not own the monument, and has not assumed control of it. Dixie County has not expended any funds for the design, construction, placement, maintenance or repair of the monument and has not had any input into the design of the monument. Dixie County has installed a notice on the monument which states that the Monument was "PLACED OWNED AND MAINTAINED BY JOE ANDERSON, JR.," though that notice is on the back of

the monument and is not visible from the front view. Dixie County concludes that "[u]nder these circumstances, there can be no doubt that the Monument is "purely private," and thereby satisfies the first prong of *Capitol Square*. 515 U.S. at 770." Doc. 120. However, these facts alone are insufficient to establish that the monument is purely private speech.

In *Pleasant Grove City v. Summum*, the Supreme Court considered whether a local government's refusal to allow the Summum religious organization to place its religious monument in a city park among other donated monuments, including a Ten Commandments monument, violated the Free Speech Clause of the First Amendment. 555 U.S. 460, 129 S. Ct. 1125 (2009). The Court held that "although a park is a traditional public forum for speeches and other transitory expressive acts, the display of a permanent monument in a public park is not a form of expression to which forum analysis applies." *Id.* at ___, 129 S. Ct. at 1129. Instead, the Court noted, "placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause." *Id*. Particularly relevant to the inquiry of how a reasonable observer would perceive the Ten Commandments display in the instant case, the Court found that:

> Just as government-commissioned and government-financed monuments speak for the government, so do privately financed and donated monuments that the government accepts and displays to the public on government land. It certainly is not common for property owners to open up their property for the installation of permanent monuments that convey a message with which they do not wish to be associated. And because property owners typically do not permit the construction of such monuments on their land, persons who observe donated monuments routinely-and reasonably-interpret them as conveying some message on the property owner's behalf. . . . This is true whether the monument is located on private property or on public property, such as national, state, or city park land.

*Id.* at ___, 129 S. Ct. at 1133.

The rationale for the Court's holding, which was in the context of public parks, applies

with greater force in the context of the comparatively smaller space of the Dixie County courthouse steps:

> Speakers, no matter how long-winded, eventually come to the end of their remarks; persons distributing leaflets and carrying signs at some point tire and go home; monuments, however, endure. They monopolize the use of the land on which they stand and interfere permanently with other uses of public space. A public park, over the years, can provide a soapbox for a very large number of orators-often, for all who want to speak-but it is hard to imagine how a public park could be opened up for the installation of permanent monuments by every person or group wishing to engage in that form of expression.

*Id.* at ___, 129 S. Ct. at 1137. Indeed, the history of the public forum doctrine controverts any notion that a six-ton monument prominently displayed on the courthouse steps could reasonably be perceived as private speech. *See Chabad-Lubavitch of Ga.,* 5 F.3d at 1391 n.11 ("reasonable observer" is familiar with general contours of Free Speech Clause and public forum doctrine). That doctrine has been applied in situations in which government-owned property or a government program is capable of accommodating a large number of public speakers without defeating the essential function of the land or the program. *Summum,* 555 U.S. at ___, 129 S. Ct. at 1132. Forums such as public parks or courthouse steps, by contrast, can accommodate only a limited number of permanent monuments. *Id.* at ___, 129 S. Ct. at 1137. Those forums have been used, "time out of mind for purposes of assembly, communicating thoughts between citizens, and discussing public questions, but one would be hard pressed to find a 'long tradition' of allowing people to permanently occupy public space with any manner of monuments." *See id.* (internal quotes, citations, and ellipses omitted).

      Dixie County contends that the six-ton granite monument is not permanent because it is not anchored to the stone of the courthouse steps. Because it is not a permanent monument, Dixie County argues, the display should be analyzed as would a speaker speaking in a public

forum on the topic of their choosing, rather than as a monument that may imply government endorsement by the circumstances of its placement or continued presence.  The Court disagrees.  In this analysis, the opposite of permanent is not "detached," but rather "temporary."  Dixie County cites no authority for the proposition that only monuments anchored or affixed to their surroundings should be considered permanent.  The monument in question weighs twelve thousand pounds, has been there for three years, and Dixie County has no plans to move it.  In fact, Dixie County has defended this lawsuit with the objective of maintaining the monument's current location.  Unlike the cross in *Capitol Square*, which would have been removed after the holidays, the monument on the front steps of the Dixie County Courthouse will remain.  It is, for all practical purposes, permanent.

Despite the actual ownership of the monument, the location and permanent nature of the display make it clear to all reasonable observers that Dixie County chooses to be associated with the message being conveyed.  As such, the Court finds that the monument displaying the Ten Commandments is government speech and must comport with the Establishment Clause.

*B.  Does the Monument Pass the Lemon Test?*

The Establishment Clause of the First Amendment to the Constitution prohibits Congress from making any law "respecting the establishment of religion, or prohibiting the free exercise thereof."  U.S. Const., Amend. I.  This prohibition applies to the states through the Fourteenth Amendment.  *Everson v. Bd. of Educ.,* 330 U.S. 1, 15, 67 S. Ct. 504, 511 (1947).

In religious-symbols cases, such as the display of the Ten Commandments, the Supreme Court has applied the analysis set out in *Lemon v. Kurtzman,* 403 U.S. 602,  91 S. Ct. 2105 (1971).  *See Glassroth v. Moore*, 335 F.3d 1282, 1295 (11th Cir. 2003); *King v. Richmond, Co., Ga.*, 331 F.3d 1271, 1275 (11th Cir. 2003).  "Under the *Lemon* analysis, a governmental practice

violates the Establishment Clause if it does not have a secular purpose, if its primary effect is to advance or inhibit religion, or if it fosters excessive government entanglement with religion." *King,* 331 F.3d at 1275 (citing *Lynch v. Donnelly,* 465 U.S. 668, 679, 104 S. Ct. 1355, 1362 (1984)). The Supreme Court has "paid particularly close attention" to whether the challenged governmental practice has either "the purpose or effect of 'endorsing religion.'" *Id.* (quoting *County of Allegheny v. ACLU, Greater Pittsburgh Chapter,* 492 U.S. 573, 592, 109 S. Ct. 3086, 3100 (1989)). However, failure of any of the three prongs of the test constitutes an Establishment Clause violation. *See id.*

Despite the Supreme Court's reliance on the three-part test in *Lemon*, it has emphasized that there is no bright-line rule for evaluating Establishment Clause challenges and that each case calls for line-drawing based on a fact-specific, case-by-case analysis. *See id.* at 1275-76. Both the Supreme Court and the Eleventh Circuit continue to use the *Lemon* analysis, despite the fact that several Justices and commentators have strongly criticized it. *See Glassroth*, 335 F.3d at 1295; *King,* 331 F.3d at 1275.

For purposes of its motion for summary judgment, the ACLU only asserts that Dixie County has violated the second prong in *Lemon*, also known as the "effect prong," which "asks whether, irrespective of government's actual purposes, the practice under review in fact would convey a message of endorsement or disapproval [of religion] to an informed, reasonable observer." *King,* 331 F.3d at 1279 (internal citation omitted). The inquiry is based on the perceptions of the reasonable observer, who is presumed to be aware of the historical context in which the religious display may be found. *See Chabad-Lubavitch of Ga. v. Miller,* 5 F.3d 1383, 1391 n.11 (11th Cir.1993) (en banc). The inquiry is not based on perceptions of the ill-informed, first-time visitor who simply views a religious symbol in a government building without regard

to public forum issues. *See id.*

As noted previously, permanent displays carry the indicia of government speech. This strongly implies endorsement of the message being conveyed. However, beyond the mere permanence of the monument, the context of the display establishes Dixie County's endorsement of its religious message. The monument is five-feet tall, made of six tons of granite, and sits alone at the center of the top of the steps in front of the county courthouse that houses every significant local government office. "No viewer could reasonably think that it occupies this location without the support and approval of the government." *Allegheny*, 492 U.S. at 599-600, 109 S. Ct. at 3104. By permitting the display of the monument in this setting, "the county sends an unmistakable message that it supports and promotes" the religious message that appears on it. *Id.* at 600, 109 S. Ct. at 3104.

Moreover, the Supreme Court has held that the length of time a religious monument is displayed without challenge can be determinative of whether the public has reasonably perceived a government effort to favor a particular religious sect or promote religion over nonreligion. *See Van Orden v. Perry,* 545 U.S. 677, 702, 125 S. Ct. 2854, 2870 (2005) (forty years passed in which monument went unchallenged) (Breyer, J., concurring). As the Third Circuit noted in Freethought Soc'y v. Chester Cnty., "a new display of the Ten Commandments is much more likely to be perceived as an endorsement of religion" by the government than one in which there is a legitimate historical significance. 334 F.3d 247, 265 (3rd Cir. 2003) (a plaque displaying the Ten Commandments on the outside wall of a historically significant courthouse for more than eighty years did not violate the Establishment Clause). In the instant case, the ACLU filed its challenge to the monument just over two months after it was erected, indicating the ease with which the monument is associated with Dixie County.

As a matter of law, the nature and context of the display establish that it conveys a message of government endorsement to the reasonable, informed observer. The content of the display reflects an unmistakable religious message. Thus, Dixie County's approval and continued placement of the monument on the courthouse steps is a violation of the second prong of the *Lemon* test. As such, the monument violates the Establishment Clause of the First Amendment to the Constitution. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Motion for Summary Judgment by the American Civil Liberties Union of Florida, Doc. 116, is GRANTED.

2. The display of the Ten Commandments at the Dixie County courthouse violates the Establishment Clause of the First Amendment to the United States Constitution, made applicable to the several states by the Fourteenth Amendment, pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

3. Dixie County is enjoined from continuing to allow the display of the Ten Commandments at the courthouse, and must remove it within thirty (30) days of this order becoming final.

4. Dixie County is ordered to pay damages to the Plaintiff in the amount of $1.

5. Both parties are directed to follow the procedures in Local Rule 54.1 with regard to attorney's fees pertaining to this matter, to which the ACLU may be entitled under 42 U.S.C. § 1988.

**DONE AND ORDERED** this __15th__ day of July, 2011

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge